[Cite as *State v. Davis*, 2018-Ohio-2672.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


|                          |   |                          |
|--------------------------|---|--------------------------|
| STATE OF OHIO,           | : |                          |
| Plaintiff-Appellee,      | : | CASE NO. CA2017-11-156   |
|                          | : | O P I N I O N            |
| - vs -                   |   | 7/9/2018                 |
|                          | : |                          |
| ANTHONY JOHN DAVIS,      | : |                          |
| Defendant-Appellant.     | : |                          |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR32723


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, OH 45036, for plaintiff-appellee

William F. Oswall, Jr., Suite 311, 119 East Court Street, Cincinnati, OH 45202, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Anthony Davis, appeals the sentence imposed by the Warren County Court of Common Pleas following the revocation of his community control.

{¶ 2} Appellant was indicted in March 2017 with tampering with evidence, a felony of the third degree, and theft, a misdemeanor of the first degree. Appellant moved the trial court for intervention in lieu of conviction ("ILC"), arguing that he was a drug dependent

person or in danger of becoming one, his drug dependency contributed to his commission of the offenses, and "counseling and treatment would substantially reduce the likelihood of additional criminal activity." On May 11, 2017, the trial court granted appellant's request for ILC. Appellant then entered a guilty plea to theft as charged and to attempted tampering with evidence, a felony of the fourth degree. As part of the terms and conditions of his ILC, appellant was prohibited from using or possessing drugs, drug paraphernalia, and alcohol for a period of three years.

{¶ 3} Less than a month later, appellant violated his ILC conditions by testing positive for methamphetamine and later by having methamphetamine and drug paraphernalia in his car. On June 30, 2017, the trial court revoked ILC, accepted appellant's guilty plea, and sentenced him to three years of community control. Appellant's community control sanctions included standard rules and conditions as well as several "special conditions." One such condition required appellant to complete treatment at a community based correctional facility ("CBCF"). The trial court advised appellant to take advantage of the program at CBCF and "learn to get off" drugs and alcohol. The trial court warned appellant that violating the terms and conditions of community control could result in the revocation of his community control and the imposition of an 18-month prison term.

{¶ 4} Approximately three months later, appellant violated the terms of his community control by voluntarily signing himself out of the CBCF, thus failing to complete treatment. On October 30, 2017, appellant admitted the violation but offered an explanation for it. Appellant explained that after he complained about other inmates torturing and killing a frog, he became the target of verbal and physical abuse and was threatened and bullied. As a result, appellant stated, the facility moved him into another room and escorted him into the dorm. Appellant claimed that the facility eventually "forced" him to sign himself out and that "there was no other option" for him as it was "no longer safe for [him] to be there." The

associate director of the facility told the trial court that appellant was complying with the treatment plan and had not had any previous violations, and that it was appellant's choice to sign himself out and leave the program because he no longer felt safe in the program.

{¶ 5} The trial court considered appellant's explanation but ultimately did not believe it. The trial court revoked appellant's community control and sentenced him to 11 months in prison.

{¶ 6} Appellant now appeals, raising two assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN IMPOSING A 11[-]MONTH PRISON SENTENCE.

{¶ 9} R.C. 2929.15(B) sets forth the penalties a trial court may impose upon an offender for violating the terms of community control. A month before appellant was sentenced to 11 months in prison, the statute was amended, effective September 29, 2017. As applicable here, R.C. 2929.15(B)(1)(c) allows a trial court to impose a prison term if the conditions of a community control are violated, provided that

> If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense or for any violation of law committed while under a community control sanction imposed for such a felony that consists of a new criminal offense and that is not a felony, the prison term shall not exceed one hundred eighty days.

R.C. 2929.15(B)(1)(c)(ii).[1]

{¶ 10} Appellant argues the trial court committed plain error by sentencing him to 11

---

1. Prior to the amendment, R.C. 2929.15(B)(1)(c) simply provided that "[i]f the conditions of a community control are violated or if the offender violates a law or leaves the state without permission of the court or the offender's probation officer, the sentencing court may impose * * * a prison term on the offender pursuant to [R.C.] 2929.14."

months in prison for the fourth-degree felony attempted tampering with evidence community control violation.[2] Appellant asserts that his voluntarily signing himself out of the CBCF was merely a technical violation of his community control, and that therefore, under newly amended R.C. 2929.15(B)(1)(c)(ii), the maximum prison term that could be imposed for the violation was 180 days. In support of his argument, appellant asserts that because the legislature did not define "technical violation," the rule of lenity requires as a matter of law that his community control violation be considered a technical violation. Appellant further asserts that given the circumstances surrounding his voluntary termination of the program, this court should deem his community control violation to be a technical violation.[3]

{¶ 11} An alleged error is plain error only if it is "obvious," and "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Morgan*, 12th Dist. Clermont No. CA2013-03-021, 2014-Ohio-250, ¶ 14; *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 181. The plain error rule should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice. *State v. Underwood*, 3 Ohio St.3d 12, 14 (1983).

{¶ 12} The rule of lenity is codified in R.C. 2901.04(A) which provides in relevant part that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." The rule of lenity applies where there is an ambiguity in a statute, meaning two reasonable ways of reading the statute, or a conflict between statutes. *State v. Young*, 12th Dist. Warren No. CA2014-05-

---

2. Appellant did not object to the prison sentence at the sentencing hearing, thus waiving all but plain error. *See* Crim.R. 52(B).

3. Appellant further asserts that at the October 30, 2017 hearing, the state "effectively conceded" that the maximum prison sentence that the trial court could impose was 180 days. Contrary to appellant's assertion, the state simply acknowledged the recent amendment of R.C. 2929.15(B), urged the trial court to impose a prison sentence, and placed on the record the parties' in-chamber discussion that the prison sentence would be "in the area of 10 to 11 months in prison" and a "a reduction from the original 18 months."

074, 2015-Ohio-1347, ¶ 48; *State v. Rupp*, 12th Dist. Preble No. CA2012-11-014, 2013-Ohio-1847, ¶ 15.

{¶ 13} "A legislative body need not define every word it uses in an enactment. Moreover, any term left undefined by statute is to be accorded its common, everyday meaning." (Citation omitted.) *State v. Dorso*, 4 Ohio St.3d 60, 62 (1983). We reject appellant's argument that simply because "technical violation" is not defined under newly amended R.C. 2929.15(B), the rule of lenity requires as a matter of law that any violation of community control be considered a technical violation. If we were to accept appellant's argument, every violation of community control, with the exception of the commission of a new felony offense, would automatically be deemed a "technical violation" under the statute. Were it so, newly amended R.C. 2929.15(B) would effectively strip a trial court of its inherent authority to determine whether a violation of the terms and conditions of community control constitutes a technical violation. We doubt the legislature intended such result. "The canon in favor of strict construction of criminal statutes is not an obstinate rule which overrides common sense and evident statutory purpose." *State v. Sway*, 15 Ohio St.3d 112, 116 (1984).

{¶ 14} We further reject appellant's argument that given the circumstances surrounding his voluntary termination of the program, his community control violation was technical in nature.

{¶ 15} The Eleventh Appellate District recently addressed newly amended R.C. 2929.15(B) in a case where the defendant had overdosed on heroin in violation of the terms of her community control. *State v. Cozzone*, 11th Dist. Geauga No. 2017-G-0141, 2018-Ohio-2249. The defendant argued that her community control violation was technical in nature, and that therefore, the maximum prison term that could be imposed for the violation was 180 days.

{¶ 16} The appellate court observed that while "technical violation" was not defined in R.C. 2929.15, other appellate districts had addressed "technical violations" as they pertained to revocation of community control sanctions and parole violations in cases predating the statutory amendment. *Id.* at ¶ 38, citing *State v. Cearfoss*, 5th Dist. Stark No. 2004CA00085, 2004-Ohio-7310 (defendant's failure to follow his probation officer's order to open the front door was a "technical" violation); *State v. Jenkins*, 2d Dist. Champaign No. 2005-CA-22, 2006-Ohio-2639 (defendant's failure to notify his parole officer before moving out of his residence where a convicted felon resided was "at best a 'technical' violation"); and *Amburgey v. Ohio Adult Parole Auth.*, 12th Dist. Madison No. CA2001-07-016, 2001 Ohio App. LEXIS 4730 (Oct. 22, 2001) ("technical" violations, in the context of parole, are those violations of the terms and conditions of the parole agreement which are not criminal in nature, such as failure to report to the parole officer, association with known criminals, leaving employment, and leaving the state). The Eleventh Appellate Court concluded that overdosing on drugs was criminal in nature and therefore could not be considered a "technical violation" of community control. *Cozzone* at ¶ 39.

{¶ 17} We decline appellant's request to find that his voluntarily signing himself out of the CBCF in violation of his community control was merely technical in nature. As stated above, appellant's community control sanctions included standard rules and conditions as well as several "special conditions." One such condition required appellant to complete treatment at a CBCF. Appellant's voluntary discharge from the CBCF's program and thus his failure to complete treatment there were not a violation of a standard term of community control, but rather, were a violation of a special condition of community control directly imposed by the trial court and specifically tailored to address and treat appellant's substance abuse issues. As the trial court explicitly told appellant at the ILC violation hearing,

> I'm going to place you in the Community Control program for a
> period of three years.
>
> I'm going to impose upon you the standard rules of Community
> Control and I'm delegating to your Community Control officer the
> authority to impose additional or special conditions as they see
> fit.
>
> And the special conditions that this Court is placing on you,
> other than the obvious ones, and she'll go over those with you,
> is I am going to order you to complete a CBCF[.]

{¶ 18} Moreover, the condition that appellant complete the CBCF treatment program was not an administrative requirement facilitating community control supervision, as was the case in *Cearfoss*, *Jenkins*, or *Amburgey*. Rather, the special condition was a substantive rehabilitative requirement which addressed a significant factor contributing to appellant's criminal conduct. Appellant's voluntary discharge from the CBCF's treatment program, therefore, cannot be considered a technical violation of community control.

{¶ 19} In light of the foregoing, we find that the trial court did not err, let alone commit plain error, in sentencing appellant to 11 months in prison under newly amended R.C. 2929.15(B) following his violation of his community control.

{¶ 20} Appellant's first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} DEFENDANT-APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 23} Appellant argues that defense counsel's failure to object to the 11-month prison sentence or argue that 180 days in prison was the maximum sentence that could be imposed under R.C. 2929.15(B) constituted ineffective assistance of counsel.

{¶ 24} To prevail on his ineffective assistance of counsel claim, appellant must show that his trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result. *State v. Jones,* 193 Ohio App.3d 400, 2011-Ohio-1717,

¶ 35 (12th Dist.); *Strickland v. Washington*, 466 U.S. 668, 687-688, 693, 104 S.Ct. 2052 (1984). In order to demonstrate prejudice, appellant must establish that, but for counsel's errors, a reasonable probability exists that the result of his trial would have been different. *State v. Haynes*, Butler App. No. CA2010-10-273, 2011-Ohio-5743, ¶ 16. The failure to make an adequate showing on either prong is fatal to appellant's ineffective assistance of counsel claim. *Id.*

{¶ 25} Even if we were to assume deficient performance, appellant cannot show any resulting prejudice from defense counsel's failure to object to the 11-month prison sentence or his failure to argue that 180 days in prison was the maximum possible sentence under R.C. 2929.15(B), given our holding under appellant's first assignment of error. *See State v. Estright*, 9th Dist. Summit No. 24401, 2009-Ohio-5676.

{¶ 26} Appellant's second assignment of error is accordingly overruled.

{¶ 27} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.