[Cite as *State v. Demangone*, 2023-Ohio-2522.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|                          |   |                            |
|--------------------------|---|----------------------------|
| STATE OF OHIO,           | : |                            |
| Appellee,                | : | CASE NO. CA2022-11-081      |
|                          | : | O P I N I O N              |
| - vs -                   |   | 7/24/2023                  |
|                          | : |                            |
| DERIK Y. DEMANGONE,      | : |                            |
| Appellant.               | : |                            |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2019 CR 1161

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

Bazeley Law, and Christopher Bazeley, for appellant.


**HENDRICKSON, P.J.**

{¶ 1} Appellant, Derik Y. Demangone, appeals the decision of the Clermont County Court of Common Pleas revoking his community control and sentencing him to 18 months in prison. For the reasons that follow, we affirm.

{¶ 2} In November 2019, appellant was indicted on one count of trespass in a habitation and one count of endangering children following an incident involving his 17-day-

old child. After consuming alcohol and taking methamphetamine, appellant became paranoid and believed people were after him and that his wife was trying to kill their newborn child. Appellant grabbed the child, ran into a neighbor's garage, and barricaded himself inside. He later exited the garage with the child and ran into a cornfield, where he was armed with two large knives. The child's mother was able to get the child back from appellant while he was in the cornfield. Law enforcement arrived on the scene, where they found appellant yelling that he "took meth and needed help." After appellant dropped the knives he was holding, he was taken into custody and transferred to a local hospital to be evaluated.

{¶ 3} Following plea negotiations, appellant pled guilty to trespass in a habitation in violation of R.C. 2911.12(B), a felony of the fourth degree. In May 2020, he was sentenced to community control for four years, with the initial portion of his community control sanction being served on intensive supervision. Among the general terms of appellant's community control were the requirements that he follow his probation officer's verbal and written commands and report to his probation officer as instructed. As specific terms of appellant's community control, the trial court ordered that appellant "not possess or consume any alcoholic beverages or illicit drugs," not enter the premises of any business or that portion of the premises of any business that sold alcoholic beverages, submit to random drug and alcohol screens, attend "Alcoholics Anonymous/Narcotics Anonymous," and participate in and successfully complete substance abuse and mental health programs. The trial court warned appellant that violating the terms and conditions of community control could result in the revocation of his community control and the imposition of an 18-month prison term.

{¶ 4} In June 2021, the trial court terminated appellant's intensive supervision and placed him under the basic supervision of the Adult Probation Department for the remainder of his community control sanction. Though now under basic supervision rather than

intensive supervision, the terms of appellant's community control remained the same.

{¶ 5} On October 20, 2022, appellant's probation officer filed an Affidavit of Community Control Violation alleging that appellant had violated the terms of his probation in three ways: (1) by testing positive for alcohol on a drug screen on September 27, 2022 and admitting he had a jello shot two days prior to the screening; (2) by failing to report to probation appointments scheduled for October 17 and 18, 2022, and (3) by failing to follow his probation officer's verbal or written instructions in that he used alcohol and did not report as ordered. On October 25, 2022, appellant admitted to the violations and offered an explanation for each. He stated that he had a jello shot for his birthday on September 25, 2022 and that he missed his probation appointments because he had a vasectomy and was in a car crash. The trial court noted that the probation department had followed up on appellant's report of a car accident by contacting the Bethel Tate Fire Department, who appellant claimed had been dispatched to the accident. The fire department advised that the only report they had about appellant involved him being observed burning mattresses in a junkyard on October 18, 2022. The trial court accepted appellant's admissions and found him guilty of violating his community control.

{¶ 6} On November 10, 2022, the trial court revoked appellant's community control and sentenced him to prison. In doing so, the trial court noted that despite appellant's lengthy criminal history, one that spanned from 2002 to 2019 and involved convictions for unlawful sexual conduct with a minor, possession of controlled substances, domestic violence, assault, felonious assault, criminal damaging, complicity to burglary, criminal trespass, menacing, breaking and entering, theft, OVI, disorderly conduct, and resisting arrest, the court had given him a chance by putting him on community control. The court stated:

[W]hen the Court put you on probation, it took a huge risk. Your

- 3 -

record is page after page after page after page after page after page after page of offenses. And so I tried to see the good about how you were coming along. And you did come along for a while. Lately you've been late, you're not showing up, you're missing appointments. Now, you're turning to alcohol. Which is what happens with you. You start to slip. And the last time you slipped – * * *

* * *

[y]ou barricaded yourself in the garage. You ran out of the garage with the child and ran into a cornfield. The child's mother was able to get the child back while you were in the cornfield. You had two – you had large knives. You were yelling you took methamphetamine and needed help.

The court found that appellant's community control violations were a "demonstrated refusal to participate in all of the community control sanctions imposed and its conditions and it demonstrate[d] that he's abandon[ed] the objects of the community control sanctions." The court imposed an 18-month prison term and informed appellant that he was subject to up to two years of optional postrelease control by the adult parole authority following his release from prison.

{¶ 7} Appellant appealed his sentence, raising two assignments of error for review. For ease of discussion, we begin with appellant's second assignment of error.

{¶ 8} Assignment of Error No. 2:

{¶ 9} THE TRIAL COURT ERRED WHEN IT FOUND THAT DEMANGONE'S COMMUNITY CONTROL VIOLATION WAS A NON-TECHNICAL VIOLATION UNDER R.C. 2929.15.

{¶ 10} In his second assignment of error, appellant argues the trial court erred in imposing an 18-month prison term following its revocation of his community control. Appellant maintains that "testing positive for alcohol once after almost two-and-a-half years on community control and failing to report to his probation officer over a period of two days" constitute mere "technical violations" that carried a maximum prison term of 180 days

pursuant to R.C. 2929.15(B)(1)(c)(ii).

**{¶ 11}** "As with all felony sentences, we review the trial court's sentencing decision for a community control violation under the standard set forth by R.C. 2953.08(G)(2)." *State v. Smith*, 12th Dist. Clermont No. CA2020-08-044, 2021-Ohio-630, ¶ 17, citing *State v. Williams*, 12th Dist. Butler No. CA2020-01-009, 2020-Ohio-5228, ¶ 12. Pursuant to that statute, this court may modify or vacate a sentence only if, by clear and convincing evidence, "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Baker*, 12th Dist. Clermont No. CA2018-06-042, 2019-Ohio-2280, ¶ 17. "A sentence is not clearly and convincingly contrary to law where the trial court 'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range.'" *Smith* at ¶ 17, quoting *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8.

**{¶ 12}** R.C. 2929.15(B)(1)(c) allows a trial court to impose a prison term if a defendant violates the conditions of his or her community control. However, a prison term for the violation of a community control sanction imposed for a fourth-degree felony offense that was not an offense of violence and was not a sexually oriented offense may not exceed 180 days if the violation was a "technical violation." R.C. 2929.15(B)(1)(c)(ii). Pursuant to an amendment (see 2020 Am.Sub.H.B. No. 1) to R.C. 2929.15 that took effect on April 12, 2021, a "technical violation" is statutorily defined as

> a violation of the conditions of a community control sanction imposed for a felony of the fifth degree, or for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense, and to which neither of the following applies:
>
> (1) The violation consists of a new criminal offense that is a felony or that is a misdemeanor other than a minor misdemeanor, and the violation is committed while under the

community control sanction.

(2) The violation consists of or includes the offender's articulated or demonstrated refusal to participate in the community control sanction imposed on the offender or any of its conditions, and the refusal demonstrates to the court that the offender has abandoned the objects of the community control sanction or condition.

R.C. 2929.15(E).

{¶ 13} Prior to the enactment of R.C. 2929.15(E), a "technical violation" and a "nontechnical violation" had been defined by the Ohio Supreme Court. *See State v. Nelson*, 162 Ohio St.3d 338, 2020-Ohio-3690. The court held that "a violation is 'nontechnical' if, considering the totality of the circumstances, the violation concerns a condition of community control that was 'specifically tailored to address' matters related to the defendant's misconduct or it can be deemed a 'substantive rehabilitative requirement which addressed a significant factor contributing to' the defendant's misconduct." *Id.* at ¶ 26, quoting *State v. Davis*, 12th Dist. Warren No. CA2017-11-156, 2018-Ohio-2672, ¶ 17, 18. "On the other hand, a violation is 'technical' when the condition violated is akin to 'an administrative requirement facilitating community control supervision.'" *Id.*, quoting *Davis* at ¶ 18. The supreme court found that "[t]here is no single factor that determines whether a violation is technical or nontechnical." *Id.* Rather, "the statute allows the trial court to engage in a practical assessment of the case before it, i.e., to consider the nature of the community-control condition at issue and the manner in which it was violated, as well as any other relevant circumstances in the case." *Id.*

{¶ 14} Though the statutory definition of "technical violation" set forth in R.C. 2929.15(E) replaces the definition set forth by the Supreme Court in *Nelson*, the court's holding in *Nelson* remains relevant. In determining whether a violation of community control is a technical or nontechnical violation, a trial court should continue to "engage in a practical

assessment of the case before it, i.e., * * * consider the nature of the community-control condition at issue and the manner in which it was violated, as well as any other relevant circumstances in the case." *Id.* at ¶ 26. *See also State v. Crose*, 3d Dist. Crawford No. 3-22-34, 2023-Ohio-880, ¶ 12 (finding that the holding in *Nelson* remains instructive even after the enactment of House Bill 1). Such considerations will be especially helpful in determining under R.C. 2929.15(E)(2) whether an offender's articulated or demonstrated refusal to participate in a condition of the offender's community control demonstrates that the offender has abandoned the objects of his or her community-control condition.

{¶ 15} Turning to the circumstances of the present case, we find that appellant's use of alcohol followed by his subsequent failure to report to the probation department for multiple appointments constitutes a nontechnical violation of his community control sanctions. Appellant's underlying conviction for trespass in a habitation involved the use of alcohol and illegal drugs. At the time the court sentenced appellant to community control, it imposed specific community-control conditions meant to address appellant's alcohol use, which had been a significant contributing factor to his erratic and illegal conduct. Appellant admitted to violating the terms of his community control by consuming alcohol and then later failing to report to his probation appointments. Specifically, appellant admitted to consuming a jello shot on September 25, 2022 and then testing positive for alcohol on a September 27, 2022 screening. He also admitted he missed consecutive appointments with his probation officer on October 17 and 18, 2022. The trial court looked at appellant's conduct, his expansive criminal history which involved many instances where appellant's failure to maintain sobriety contributed to his unlawful conduct, and noted that appellant was "slipping" and getting "sloppy." As the court explained,

> Lately you've been late, you're not showing up, you're missing appointments. Now, you're turning to alcohol. Which is what happens with you. You start to slip. And the last time you

slipped – * * *

* * *

[y]ou barricaded yourself in the garage.  You ran out of the garage with the child and ran into a cornfield.  The child's mother was able to get the child back while you were in the cornfield.  You had two – you had large knives.  You were yelling you took methamphetamine and needed help.

{¶ 16} Appellant offered a variety of excuses to try to mitigate his violations, stating that he or his wife had attempted to communicate with his probation officer on the days he missed appointments, that he had been involved in a car accident on the day of one of the appointments, that he had been recovering from a surgery, that his home had been damaged in a tornado, and that he had been processing and dealing with the death of a daughter.  The court considered all of these factors and specifically addressed appellant's claim that he failed to report to his probation officer because of a car accident.  Contrary to appellant's assertions about the Bethel Fire Department being dispatched to a car accident in which he was involved, the fire department's only involvement with appellant concerned a report that appellant had been burning mattresses in a junkyard on October 18, 2022.

{¶ 17} The court was entitled to discredit appellant's excuses for violating his community control and find that appellant's actions demonstrated his refusal to participate in a community-control condition that had been specifically tailored to address matters relating to his alcohol usage, which contributed to his trespass in a habitation offense.  The trial court tailored appellant's community control sanctions to preclude appellant's alcohol usage as a rehabilitative requirement to address a significant factor that contributed to his trespass offense.  Appellant's use of alcohol while on community control was not akin to an administrative requirement to facilitate his community control supervision.  Appellant was specifically ordered not to use alcohol as a condition of his community control and he freely admitted to violating that condition, and other terms, of his community control sanctions.

Appellant's conduct, therefore, demonstrated his refusal to participate in the imposed community-control conditions and this refusal demonstrated he had abandoned the objects of his community control. Appellant's violation was, therefore, a nontechnical violation. *See, e.g., State v. Saurber*, 12th Dist. Butler No. CA2020-04-057, 2021-Ohio-464, ¶ 13-15 (finding a defendant's violation of her community control was nontechnical where the trial court had ordered her to avoid drug usage in order to address matters related to her underlying theft offense and she later admitted to violating the condition by using marijuana, fentanyl, and opiates); *State v. Esker*, 6th Dist. Ottawa Nos. OT-19-043 and OT-19-044, 2020-Ohio-4538, ¶ 13-14 (finding a defendant's violation of her community control was nontechnical where she admitted to consuming alcohol and not complying with substance abuse treatment recommendations).

{¶ 18} As appellant's violation of his community control was not a technical violation, the 180-day prison term limitation set forth in R.C. 2929.15(B)(1)(c)(ii) was inapplicable. The trial court had the authority to impose the 18-month prison term and the imposed sentence was not clearly and convincingly contrary to law. Appellant's second assignment of error is, therefore, overruled.

{¶ 19} Assignment of Error No. 1:

{¶ 20} THE TRIAL COURT FAILED TO PROPERLY ADVISE DEMANGONE OF ALL OF THE POSSIBLE PENALTIES FOR A VIOLATION OF PRC.

{¶ 21} In his first assignment of error, appellant contends the trial court erred in imposing postrelease control because the court failed to "orally advise [him] of the possibility that a violation could result in other penalties including more restrictive sanctions, a longer period of supervision, or that he could be sent back to prison even if he completed all of his sentenced prison time as required by R.C. 2967.28(F)(3)." Appellant concedes such advisements are in his sentencing entry, but he maintains that he had to be orally advised

in order for postrelease control to be properly imposed.

{¶ 22} "A trial court must properly impose postrelease control at the sentencing hearing and in the sentencing entry." *State v. Williams*, 12th Dist. Butler No. CA2018-03-055, 2018-Ohio-3990, ¶ 17, quoting *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, ¶ 18-19. To properly impose postrelease control, the trial court must inform the defendant at the sentencing hearing that upon the defendant's release from prison, he or she will be subject to postrelease control if convicted of a felony for which postrelease control is mandatory pursuant to R.C. 2929.19(B)(2)(d) and 2967.28(B), or that the defendant may be subject to postrelease control if convicted of a less-serious felony for which the Adult Parole Authority has discretion to impose postrelease control under R.C. 2929.19(B)(2)(e) and 2967.28(C). *See State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, ¶ 9. The court must also inform the defendant of the length or potential length of postrelease control and must inform the defendant that if he or she "violates that supervision * * *, the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed upon the offender." *Id.*, quoting R.C. 2929.19(B)(2)(e). After orally providing these notifications, the trial court must ensure that the sentencing entry sets forth the following information in order to validly impose postrelease control: "(1) whether postrelease control is discretionary or mandatory, (2) the duration of the postrelease-control period, and (3) a statement to the effect that the Adult Parole Authority * * * will administer the postrelease control pursuant to R.C. 2967.28 and that any violation by the offender of the conditions of postrelease control will subject the offender to the consequences set forth in that statute." *Id.* at ¶ 1.

{¶ 23} The required postrelease control notifications are derived from section R.C. 2929.19(B)(2), which states in relevant part the following:

> [I]f the sentencing court determines at the sentencing hearing

that a prison term is necessary or required, the court shall do all of the following:

* * *

(e) Notify the offender that the offender may be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the third, fourth, or fifth degree that is not subject to division (B)(2)(d) of this section. * * *

(f) Notify the offender that, if a period of supervision is imposed following the offender's release from prison, as described in division (B)(2)(d) or (e) of this section, and if the offender violates that supervision or a condition of post-release control imposed under division (B) of section 2967.131 of the Revised Code, the parole board may impose a prison term, as part of the sentence, of up to one-half of the definite prison term originally imposed upon the offender as the offender's stated prison term or up to one-half of the minimum prison term originally imposed upon the offender as part of the offender's stated non-life felony indefinite prison term. * * *

R.C. 2929.19(B)(2)(e)-(f).

{¶ 24} Appellant was convicted of trespass in a habitation, a felony of the fourth degree. As a result, he was subject to a discretionary term of up to two years of postrelease control. R.C. 2967.28(C). When appellant was sentenced following the revocation of his community control, the trial court complied with the notification requirements set forth in R.C. 2929.19(B)(2) by informing appellant of the following:

THE COURT: You understand you'll be subject to up to two years of optional postrelease control; you understand that?

* * *

[Appellant]: Yes, Your Honor.

THE COURT: You understand if placed on postrelease control, the adult parole authority can return you back to prison for up to nine months if you violate any of their conditions, not to exceed a maximum of 50 percent of your original prison sentence; you understand that?

[Appellant]: Yes, sir.

THE COURT: You understand if you're convicted of a new felony while out on postrelease control that, in addition to being punished for the new felony, that judge could add an additional consecutive term of one year or what remains on your postrelease control term, whichever is greater, as a maximum; you understand that?

[Appellant]: Yes, sir.

These notifications were then incorporated into appellant's sentencing entry.

{¶ 25} Based on the record before us, we find that postrelease control was properly imposed. Contrary to appellant's arguments, the trial court was not required to orally advise him of the "possibility that a violation could result in other penalties including more restrictive sanctions, a longer period of supervision, or that he could be sent back to prison even if he completed all of his sentenced prison time as required by R.C. 2967.28(F)(3)" as such advisements are not required by the express language of R.C. 2929.19(B)(2). Had the legislature intended for defendants to be provided with additional notifications about postrelease control, it would have included those notifications and requirements in R.C. 2929.19(B)(2). It chose not to do so.

{¶ 26} Accordingly, as the trial court complied with the postrelease control notification requirements at the sentencing hearing and incorporated the required information into appellant's sentencing entry, we find that the trial court properly imposed on appellant a discretionary term of postrelease control for a period of up to two years. Appellant's first assignment of error is overruled.

{¶ 27} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.